IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CAILEAN ROSS | : | CIVIL ACTION |
| v. | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of Social Security Administration | : | NO. 14-2773 |

### REPORT AND RECOMMENDATION

THOMAS J. RUETER                                            April 30, 2015
United States Magistrate Judge

         Plaintiff, William Cailean Ross, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Social Security Administration ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act").

         Plaintiff filed a Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br.") and defendant filed a Response to Request for Review by Plaintiff ("Def.'s Br."). For the reasons set forth below, this court recommends that plaintiff's Request for Review be **DENIED**.

### I.  FACTUAL AND PROCEDURAL HISTORY

         Plaintiff filed applications for DIB and SSI on February 28, 2011, alleging disability since November 30, 2006. (R. 26, 148-61.) The claims were denied initially and a request for a hearing was timely filed. (R. 98-110.) A hearing was held on December 4, 2012, before Administrative Law Judge ("ALJ") John Fitzpatrick. (R. 43-73.) Plaintiff, who was

represented by counsel, appeared and testified. Vocational Expert ("VE") Beth Kelly also appeared and testified. Id. In a decision dated December 18, 2012, the ALJ found that plaintiff was not disabled under the Act. (R. 26-39.) The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since November 30, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), Asperger's syndrome, speech impairment, scoliosis, and aorta enlargement (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: moderate limitation in his ability to understand and remember detailed instructions, to carry out detailed instructions and to maintain attention and concentration for extended periods. The claimant would be capable of understanding and performing simple tasks in a competitive work environment.

6. The claimant is capable of performing past relevant work as a stores [sic] laborer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2006, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(R. 28-38.)

Plaintiff filed a request for review of the decision of the ALJ that was denied by the Appeals Council on March 19, 2014. (R. 1-5.) The ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum, 48 F.3d at 117. This court may not weigh evidence or substitute its conclusions for those of the fact finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993)). As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Specifically, the impairment must be such that the claimant "is not only unable

to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 423(d)(5). A claimant satisfies this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). Once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience, the claimant has the ability to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f).

The Commissioner decided this matter by utilizing the five step sequential evaluation process established by the Department of Health and Human Services to determine whether a person is "disabled." This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520, 416.920.

### III. BACKGROUND

#### A. Testimony of Plaintiff, December 4, 2012

At the administrative hearing, plaintiff, accompanied by counsel, appeared and

testified. (R. 43-73.) He lived with his mother and grandfather. He has a driver's license.[1] (R. 51.) Plaintiff is a high school graduate with experience working in retail sales.[2] He worked full time for an eighteen month period following his graduation. (R. 46.) However, after being fired from this position, plaintiff had difficulty finding other full time work. (R. 46-47.) He also stated that "the monotony of the job was–was overly–was stressing me out. I lost focus easily. I couldn't stay on task."[3] (R. 47.) At the time of the administrative hearing, plaintiff attended audio engineering school Monday through Thursday, and worked twelve hours per week at an office supply store stocking shelves and operating cash registers. (R. 47-48.) He also assisted customers by locating items and demonstrating products. (R. 55-56.) Plaintiff was uncertain about whether he could work forty hours a week at the store if given the opportunity because on some days he was "stressed out after six hours." (R. 55-56.)

With respect to his impairments, plaintiff acknowledged that he was diagnosed with ADHD but was not receiving treatment for this condition at the time of the hearing. (R. 49-50.) The ALJ inquired as to how plaintiff could manage to focus long enough to pass classes at school. The following exchange took place between the ALJ and plaintiff:

> ALJ: But, obviously, if you can pay attention in school and take up those courses you're taking, you could do simple repetitive type work, right?

---

[1] Plaintiff was twenty-eight years old at the time of the administrative hearing. (R. 65.)

[2] He also earned a certificate in graphic design while he attended high school. (R. 49.)

[3] Plaintiff maintained that he attempted to secure a position that did not require him to work with the public, but was unsuccessful in these efforts. (R. 47.)

> PLAINTIFF: I lose focus on doing simple, repetitive work real easily.
>
> ALJ: Well, how do you manage to focus enough to pass classes in school?
>
> PLAINTIFF: Because it's challenging and I'm really, really passionate about music and recording and giving back to something that's–
>
> ALJ: So it's mostly–mostly a question of motivation, huh?
>
> PLAINTIFF: For that was–was that and I still zone out and I've found ways to cope as best I can with my disabilities. They're always there, I always have to battle them, but we can't be on medication all the time, can we?

(R. 50.) Plaintiff also has Asperger's Syndrome and oppositional defiant disorder. He related that he has difficulty with authority figures and this behavior is associated with those conditions. (R. 55.) He is able to care for his personal hygiene and perform household chores and maintenance. (R. 52-53.) He kept in touch with friends via cell phone because he did not have a car. He has had girlfriends in the past. (R. 52.)

### B.  Testimony of Barbara Louise Ross, December 4, 2012

Ms. Ross is plaintiff's mother. She related that plaintiff has had a total of three jobs. (R. 57-58.) When he is not working or attending school, plaintiff plays video games, watches television, or interacts with his friends by telephone. He also cooks his own meals.[4] She noted that at times when plaintiff's stress level was elevated, he stuttered and became "much more defiant." He also drank alcoholic beverages on occasion to combat his stress. (R. 59-60,

---

[4] Ms. Ross indicted that on a "bad day" plaintiff would exhibit a lot of oppositional behavior and employ techniques so as to avoid doing things he was asked to do. She said her son was not self-motivated, and his "sense of reality is not the same as what you and I think of reality and that worries me." She added that plaintiff can have very good, alert days, while other days he needed direction to perform basic activities. (R. 62-63.)

63.)

Ms. Ross explained that her son was diagnosed with a "written language disability." His oral vocabulary level was at high school or college level, but he substitutes lower level vocabulary when he writes. She added that he also experienced difficulty with small motor coordination, and it was challenging for him to write his thoughts on paper. (R. 61.) Ms. Ross related that plaintiff had difficulty in social situations and interfered in conversations in order to change the conversation to topics that interest him. (R. 65.) She testified that plaintiff did not get along with his grandfather, and also had difficulty interacting with other family members and adults. (R. 63-65.)

Ms. Ross believed plaintiff was able to do part-time work but questioned his ability to work for eight hours per day due to problems with his "attention span." (R. 65-66.) She has spoken to his employers about his inconsistent ability to focus. (R. 66.) She added that plaintiff had been treated for ADHD "from eight years old until he was around 22" but now refuses to take medication. (R. 67.)

    C.    **Testimony of VE Beth Kelly, December 4, 2012**

The ALJ posed the following hypothetical to the VE:

> I'd like you to assume that we have a 28-year-old high school graduate with some additional education but is as yet incomplete; this person would have the residual functional capacity described in Exhibit 1A; there is a diagnosis there of organic mental disorders, autism, and personality disorder such that he has mild impairments of daily living, mild impairments of social function, moderate impairments of the ability to maintain concentration, persistence, and pace; he will have the mental RFC described in Exhibit 1A beginning at page 08.

. . .

>All right.  Now if that is the correct hypothetical–I'm sorry, if that is the correct RFC for this person I'm describing to you, would that person be capable of performing the past relevant work or any other work available in the labor force?

(R. 68-69.)  The VE opined that given those limitations, the hypothetical individual would be able to perform plaintiff's past jobs.  (R. 70.)  The VE concluded that the hypothetical individual also could perform the unskilled jobs of cleaner, packer and laundry sorter.  (R. 70-71.)  In response to questioning by plaintiff's counsel, the VE responded that the individual could not perform these jobs if he required unscheduled breaks of ten to fifteen minutes duration.  (R. 71-72.)  She added that while these jobs "are not really interactive teamwork types of jobs," interaction with coworkers or supervisors would occur occasionally, but is "not a critical factor of the tasks."  (R. 72.)

## IV.    DISCUSSION

Plaintiff avers that substantial evidence does not support the finding of the ALJ that plaintiff is not disabled.  Specifically, plaintiff argues that:  (1) the ALJ did not properly consider plaintiff's physical impairments in his RFC assessment; (2) the ALJ failed to appropriately address some medical evidence; and (3) the ALJ did not properly address the credibility of plaintiff and his mother.  (Pl.'s Br. at 2-11.)  Defendant maintains that substantial evidence supports the opinion of the ALJ.  (Def.'s Br. at 3-11.)

### A.    ALJ's Consideration of Plaintiff's Physical Impairments

Plaintiff argues that the ALJ "erred by failing to find that plaintiff has any physical or communicative limitations."  (Pl.'s Br. at 2-3.)  Specifically, plaintiff avers that the ALJ erred by concluding that plaintiff's scoliosis and enlarged aorta were "severe" at step two, but

neglected to account for them in his RFC finding.[5]  Id.

Social security regulations provide the following with respect to the severity of impairments:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. §§ 404.1523, 416.923.  Plaintiff asserts that the ALJ found plaintiff's scoliosis and aorta enlargement to be severe and "significantly limited Plaintiff's ability to perform basic work activities." (Pl.'s Br. at 2.)  However, after a review of the opinion of the ALJ, it is clear that the ALJ determined that these impairments were severe **in combination** with the claimant's mental impairments. (R. 29 (emphasis added)).  The ALJ explained that in "terms of the claimant's physical impairments, although the impairments do not affect the claimant's exertional abilities, and although he receives no consistent treatment for them, the impairments are considered severe in combination with the claimant's mental impairments." (R. 32.)

Moreover, in his opinion, the ALJ explained his rationale for concluding that plaintiff's physical impairments did not affect his exertional abilities.  The ALJ noted that a

---

[5] RFC is defined as the most a claimant can do, despite physical and/or mental limitations. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  The ALJ is required to consider the limitations arising from all of claimant's impairments, including impairments that are considered non-severe. The RFC assessment is an administrative finding, not a medical opinion. SSR 96-5p, Wilkinson v. Colvin, 558 F.App'x 254, 256 (3d Cir. 2014) (not precedential) (indicating that social security regulations are clear that RFC is determination reserved to the Commissioner).

January 10, 2006 chest x-ray revealed a normal-sized heart. (R. 32, 347.) Consultative examiner Alexander J. Klufas, M.D., reported that despite plaintiff's scoliosis, he had a "fairly normal" posture and gait, no difficulty ambulating or switching positions, no difficulty performing any of the active ranges of motion, and possessed normal cardiac abilities. Plaintiff reported to Dr. Klufas that he could walk three to four miles, stand for eight hours and had no difficulties with sitting. (R. 32-33, 337-40.) Additionally, the ALJ indicated that plaintiff repeatedly admitted that he did not experience exertional limitations due to his physical impairments. (R. 33.) For example, plaintiff reported that he was diagnosed with an enlarged aorta, "but in his words, he grew into it" and no longer experienced tachycardia. (R. 338.) He also related that he was "physically able to work." (R. 228.) In addition to plaintiff's representations, the record reveals that plaintiff's mother reported that his aortic enlargement and scoliosis were kept under control by exercising and avoiding temperature extremes. (R. 244.) In an eligibility worksheet, it was reported that plaintiff was not limited in his mobility. (R. 305.)

In support of his conclusion that plaintiff's physical impairments did not cause any exertional impairments, the ALJ also considered plaintiff's daily activities. The ALJ related that plaintiff's self-described activities do not reflect disabling limitation. Plaintiff was "able to wash dishes, prepare meals, and take out the trash and maintains the ability to follow a schedule, drive a motor vehicle, attend classes, and work part-time." (R. 35.) Plaintiff testified that he worked two days per week for up to six hours per day, where he stocked shelves, assisted customers and operated the cash register. (R. 47.) He indicated that if he were not attending classes, he could work five days per week. (R. 48.) Accordingly, this court finds that substantial evidence supports the ALJ's finding that plaintiff's scoliosis and enlarged aorta did not cause any

exertional limitations that should have been included in his RFC determination.

With respect to his speech impairment, the ALJ noted that plaintiff indicated he had difficulty with his speech impairment when stressed.  However, plaintiff also testified that while working at his current job, he was comfortable working with customers notwithstanding his impediment because the products were "something that I know about and it's something I'm comfortable talking about." (R. 55-56.)  Dr. Klufas also found that plaintiff was able to hold a conversation employing language that "is not difficult to understand," with no stuttering, and spoke "effectively although with a limited vocabulary." (R. 33, 339-40.)  William M. Waid, Ph.D., another consultative examiner, described plaintiff's speech as "fluent and unimpaired." (R. 34, 332.)  In order to accommodate plaintiff's claims of exacerbation of his speech impairment when stressed, the ALJ limited plaintiff to work that involved only simple tasks.  In addition to plaintiff's jobs in retail, one of which plaintiff was performing at the time of the hearing, the ALJ noted that the representative jobs of cleaner, packer and sorter could be performed by plaintiff, because these jobs required, inter alia, that plaintiff "would only have occasional interaction with supervisors and coworkers."  The ALJ based this testimony on the representations of the VE, and on other evidence in the record. (R. 37-38.)  Thus, this court finds that substantial evidence supports the ALJ's analysis of plaintiff's physical limitations and their effect, if any, on his ability to perform work.

    **B.**    **The ALJ's Analysis of Record Evidence**

Plaintiff does not challenge the ALJ's analysis of medical opinions in the record.  However, he does question the ALJ's analysis of adaptive behavior reports completed by non-physician examiners Suzanne Danese and Stefani Alexander on June 14, 2011 and June 1, 2012.

Specifically, plaintiff alleges that the ALJ failed to "appropriately address reports from Keystone Autism Services." (Pl.'s Br. at 3-6.) The gravamen of plaintiff's complaint is that the ALJ "cherry picked" portions of the reports and then presented these "as supportive of his own findings by summarizing them in a misleadingly selective way." Id. at 6.

The ALJ summarized the results of the two reports:

> In a Report of Adaptive Behavior Testing dated June 14, 2011, Ms. Danese indicated that the claimant's broad independence is comparable to that of the average individual at age 15 and that his functional independence is limited to age appropriate (Exhibit 11F, p.9). Ms. Danese reported that the claimant's motor skills, personal living skills, and community living skills are limited to age appropriate and that his social interaction and communication skills are limited (Exhibit 11F. p.9). Ms. Danese indicate that the claimant "will need infrequent to no support, somewhat more than others his age, primarily because of limited to age-appropriate adaptive behavior" (Exhibit 11F, p.9).
>
> In a Report of Adaptive Behavior Testing dated June 1, 2012, Stefani Alexander, a person not identified as a psychologist or psychiatrist, indicated that the claimant's "functional independence is age-appropriate" and "is comparable to that of the average individual at age 21 years" (Exhibit 11F, p.2). Ms. Alexander further noted that the claimant's personal living skills and community living skills are age-appropriate and that his motor skills and social interaction and communication skills are limited to age appropriate (Exhibit 11F, p.4). Ms. Alexander reported that the claimant "will need infrequent or no support, about the same as others his age" (Exhibit 11F, p.4). Therefore, with participation in the ACAP, the claimant's behaviors have steadily improved to an age-appropriate level (Exhibit 7F, 11F.)

(R. 34-35.) Plaintiff primarily complains that the ALJ should have been more detailed in his decision in his discussion of those reports.[6] (Pl.'s Br. at 3-6.) As an initial matter, this court

---

[6] Plaintiff points to several instances where the ALJ allegedly failed to be specific enough in his opinion. For example, plaintiff maintains that while the ALJ noted that the June 2011 report indicated that plaintiff's broad independence was that of an average fifteen year old, the ALJ failed to note that plaintiff was twenty-seven years old at the time. However, plaintiff's date of birth is located in the ALJ's decision, and it does not appear to this court that the ALJ

12

notes that there is "no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." Hur v. Barnhart, 94 F.App'x 130, 133 (3d Cir. 2004) (not precedential). "A written evaluation of every piece of evidence is not required, so long as the ALJ articulates at some minimum level her analysis of a particular line of evidence." Phillips v. Barnhart, 91 F.App'x 775, 780 n.7 (3d Cir. 2004) (not precedential)

        The ALJ relied upon the summaries set forth in the reports of Ms. Danese and Ms. Alexander. The ALJ related, inter alia, that the aforementioned test results showed that plaintiff's behaviors had improved with participation in the Adult Community Autism Program ("ACAP") from June 2010 and June 2012. (R. 34-35.) The ALJ further indicated that Dr. Waid indicated that "numerous deficiencies" mentioned in a report of adaptive behavior testing were "not observable" during his psychological evaluation of plaintiff. (R. 34.) The ALJ also noted that the most current adaptive reports related that despite deficiencies, plaintiff would require infrequent to no support. (R. 34-35, 362, 367.) The ALJ also relayed, and plaintiff confirmed via his testimony, that plaintiff attended class four days per week, and worked twelve hours a week performing such tasks as assisting customers and demonstrating products, despite any

---

attempted to obfuscate this fact. (R. 37.) Plaintiff further argues that the ALJ failed to note the June 2011 report also indicated that age-level tasks involving time and time concepts would be difficult for plaintiff, as would determining the value of money, dressing and grooming, work habits and prevocational skills, and getting around the home, neighborhood, or traveling in the community. (Pl.'s Br. at 4-5.) However, at the hearing, plaintiff testified that he was working at an office supply store for twelve hours a week, and performed such tasks as operating cash registers, demonstrating products and assisting customers. Furthermore, plaintiff was attending classes four days per week. Additionally, he stated that he had a driver's license and was capable of driving an automobile. He also took care of his own personal hygiene and cooked his own meals. (R. 47-53.) Most importantly, this court notes that both the June 2011 and June 2012 reports concluded that despite deficits, plaintiff would need infrequent or no support. (R. 34-35.)

limitations included in the reports prepared by Ms. Danese and Ms. Alexander. (R. 47-53.) Finally, the ALJ noted that Roger Fretz, Ph.D., a state agency psychological consultant, determined that plaintiff "would be capable of understanding and performing simple tasks in a competitive work environment." (R. 36.) As such, the ALJ concluded that plaintiff was capable of performing work with the following nonexertional limitations:

> moderate limitation in his ability to understand and remember detailed instructions, to carry out detailed instructions and to maintain attention and concentration for extended periods. The claimant would be capable of understanding and performing simple tasks in a competitive work environment.

(R. 31.) Considering all the evidence, the ALJ acknowledged that plaintiff retained certain limitations and accounted for these limitations in his RFC determination. Thus, this court finds that plaintiff's argument regarding the specificity with which he analyzed the adaptive behavior reports in the record is without merit.

### C. ALJ's Analysis of the Credibility of Plaintiff and Ms. Ross

Plaintiff also complains that the credibility determination of the ALJ was flawed due to his failure to consider evidence in the record that supports plaintiff's complaints regarding his symptoms. Plaintiff further argues that the ALJ's credibility determination of Ms. Ross' testimony also was deficient. (Pl.'s Br. at 6-10.) Defendant asserts that substantial evidence supports the credibility determination of the ALJ. (Def.'s Br. at 8-10.)

It is within the province of the ALJ to evaluate the credibility of the claimant. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). In addition to the medical evidence, social security regulations allow the ALJ to consider the following as part of the credibility analysis: 1) daily activities; 2) duration, location, frequency, and intensity of the pain and other

symptoms; 3) precipitating and aggravating factors; 4) medication taken to alleviate pain or other symptoms; 5) treatment other than medication; and 6) any other measures used to relieve the symptoms. 20 C.F.R. § 404.1529(c)(3)(i), 416.929(c)(3)(i). A claimant's testimony regarding subjective complaints is entitled to great weight when supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979). See also Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002) (subjective complaints must be given "serious consideration") (citation omitted). An ALJ may disregard subjective complaints when contrary evidence exists in the record. Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993). The ALJ must, however, provide his or her reasons for doing so. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). The ALJ may not reject pertinent or probative evidence without an explanation. Johnson v. Comm'r of Soc. Sec. Admin., 529 F.3d 198, 204 (3d Cir. 2008).

      In this case, the ALJ set forth an explanation for discounting plaintiff's symptoms and limitations. Pursuant to social security regulations, the ALJ considered plaintiff's treatment or lack thereof in assessing his credibility. The ALJ related: "In terms of the claimant's mental impairments, the claimant has not consistently sought treatment from a mental health treatment provider for his mental impairments. He does not attend monthly medication checks with a psychiatrist or participate in weekly individual therapy sessions with a therapist."[7] (R. 33.) Despite plaintiff's protestations to the contrary, this was permissible reasoning for discounting plaintiff's complaints.[8] 20 C.F.R. § 404.1529(c)(3)(i), 416.929(c)(3)(i).

---

[7]     Although the ALJ did acknowledge that plaintiff received treatment for his impairments from his primary care physician. (R. 33.)

[8]     Plaintiff's counsel insinuates that one reason plaintiff may not have sought treatment was due to his mental condition, but provides no evidence to support this notion. (Pl.'s

The ALJ also discussed medical evidence to support his assessment of plaintiff's credibility. The ALJ noted that Dr. Waid found that plaintiff had not demonstrated reported limitations during his examination, and thus had no more than mild symptoms. (R. 34, 331-34.) The ALJ further related that the RFC assessment of Dr. Fretz also supports the ALJ's credibility finding. (R. 36.) Dr. Fretz found that plaintiff was not significantly limited in remembering locations and work-like procedures, or in understanding/remembering/carrying out very short and simple instructions. (R. 81.) Dr. Fretz also determined that plaintiff was not significantly limited in performing activities within a schedule, maintaining regular attendance, sustaining an ordinary routine without special supervision, working in coordination with others without being distracted, and making simple work-related decisions. Dr. Fretz concluded that plaintiff did not have social interaction or adaption limitations. (R. 81-82.) He based his conclusions on the fact that plaintiff was capable of self-care, performed daily living activities, drove an automobile, had completed a technical course, worked part-time, and had an interest in working additional hours than he currently was assigned. (R. 82.) As set forth above, the ALJ also related that according to results of adaptive behavior testing in 2012, plaintiff's broad independence was age-appropriate, and he would require "infrequent or no support, about the same as others his age." (R. 35, 362, 367.) The ALJ reported that "with participation in ACAP, the claimant's behaviors have steadily improved to an age-appropriate level." (R. 35.)

In addition, the ALJ referenced plaintiff's daily activities to refute plaintiff's assertions of disabling limitations. The ALJ noted that plaintiff "has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms

---

Br. at 7.)

16

and limitations." Id. By his own admission, plaintiff was able to wash dishes, prepare meals, take out the trash, maintain and follow a schedule, drive an automobile, attend classes and work part time. He went out alone, as often as he wanted, shopped in stores and on-line on a weekly basis, had a small group of friends, and attended concerts. (R. 35, 51-53, 196-97, 199, 215-18, 308.) Thus, this court finds that substantial evidence supports the finding of the ALJ with respect to plaintiff's credibility.

Plaintiff also complains that the ALJ improperly rejected the testimony of Ms. Ross, plaintiff's mother. (Pl.'s Br. at 9-10.) This court notes that this is not a case where the ALJ failed to consider lay testimony. See Burnett v. Comm'r Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000) (finding that the ALJ "failed to mention" the testimony of lay witnesses and remanded for the ALJ to address their testimony, including testimony of claimant's husband). Here, after summarizing in detail the testimony of Ms. Ross, the ALJ found her testimony less than credible. (R. 32, 36.) The ALJ specifically stated:

> In terms of Ms. Ross' testimony and Third Party Function Report dated March 20, 2011 (Exhibit 4E), because Ms. Ross is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the information provided is questionable. Moreover, by virtue of the relationship with the claimant, Ms. Ross cannot be considered a disinterested third party witness whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Little weight is given to this third party witness's testimony and report because it, like the claimant's allegations, is simply not consistent with the record as a whole.

(R. 36.) The ALJ noted that in addition to the reasons set forth above for specifically discounting the testimony of Ms. Ross, he also relied upon his rationale for discrediting plaintiff's subjective complaints, a rationale this court finds legitimate. As set forth above, the ALJ cited to medical

17

evidence, plaintiff's testimony and activities of daily living to reject plaintiff's averments of disabling limitations. Accordingly, this court finds that substantial evidence supports the ALJ's credibility findings.

V.      **CONCLUSION**

After a careful review of the evidence in the record, and for the reasons set forth above, this court finds that the ALJ's findings in his decision and his conclusion that plaintiff is not disabled are supported by substantial evidence. This court notes that "the question is not whether we would have arrived at the same decision; it is whether there is substantial evidence supporting the Commissioner's decision." Donatelli v. Barnhart, 127 F.App'x 626, 630 (3d Cir. 2005) (not precedential) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)). Accordingly, the court makes the following:

**R E C O M M E N D A T I O N**

AND NOW, this 30th day of April, 2015, upon consideration of plaintiff's Brief and Statement of Issues in Support of Request for Review and defendant's response thereto, it is respectfully recommended that plaintiff's Request for Review be DENIED for the reasons set forth in this Report and Recommendation. The parties may file objections to the Report and Recommendation. See Loc.R. Civ. P. 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM CAILEAN ROSS | : | CIVIL ACTION |
| v. | : | |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security<br>Administration | :<br><br>: | <br><br>NO. 14-2773 |

**O R D E R**

AND NOW, this     day of           , 2015, upon consideration of Plaintiff's Brief and Statement of Issues in Support of Request for Review and defendant's Response to Request for Review of Plaintiff, and after review of the Report and Recommendation of United States Magistrate Judge Thomas J. Rueter, it is hereby

**O R D E R E D**

1. The Report and Recommendation is APPROVED and ADOPTED;

2. Judgment is entered affirming the decision of the Commissioner of the Social Security Administration and the relief sought by plaintiff is DENIED; and

3. The Clerk of Court is hereby directed to mark this case closed.

BY THE COURT:

_____
EDWARD G. SMITH,     J.